**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467

Attorneys for Mr. Al-Khalaqi

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**(HONORABLE REGGIE B. WALTON)**

| | | |
|---|---|---|
| ASIM BEN THABIT AL-KHALAQI, | ) | Civil Action No.    05-CV-0999-RBW |
| Petitioner, | ) | |
| v. | ) | |
| GEORGE W. BUSH, *et al.*, | ) | NOTICE OF MOTION AND MOTION FOR AN ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL WITH ADVANCE NOTICE |
| Respondents. | ) | OF ANY REMOVAL FROM GUANTANAMO |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. §1651, Asim Ben Thabit Al-Khalaqi, (hereinafter "Petitioner") respectfully moves for an order requiring Respondents to provide counsel with advance notice of any intended removal of Petitioner from Guantanamo Bay Naval Base in Cuba.[1]

On information and belief, Respondents have contemplated or are contemplating removal of Petitioners from Guantanamo to foreign territories for torture or indefinite imprisonment without due process of law.

---

[1] Footnotes to sources are included for the convenience of the Court and the classification assessment of this document rather than for any other reason. The obstacles placed in the way of counsel securing verified information about each element of the pleading below from the client are significant, but counsel verifies by his signature that each factual allegation is true and accurate to the best of the information counsel has received from CCR and other legitimate sources of information.

Counsel for Mr. Al-Khalaqi have requested access to him, but are yet unable to visit him at Guantanamo Bay in Cuba. Counsel have been informed that security clearance will take up to 10 weeks to complete, and even then access to Mr. Al-Khalaqi is not guaranteed and will have to be arranged. Therefore, Counsel files this motion in the above matter on behalf of Mr. Al-Khalaqi. Petitioner, through counsel, requests advance notice to enable counsel to contest any removal from Guantanamo and preserve the jurisdiction of the Court in this matter.

## I.

## STATEMENT OF FACTS

Mr. Al-Khalaqi is a citizen of Yemen.[2] He is being detained as an "enemy combatant" at Camp Delta in Guantanamo Bay Naval Base in Cuba. Mr. Al-Khalaqi denies being an "enemy combatant" and contends that he is being detained in violation of the Constitution, treaties and laws of the United States.

Mr. Al-Khalaqi has reason to fear he will be transferred to a country where he will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times* and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to a recent article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign

---

Without access to Mr. Khalaqi, the facts included here are scant and unverified. Counsel has not received any discovery in this matter. Therefore, Counsel reserves the right to, at a later date, amend any statement of facts or assertions once contact is established with Mr. Khalaqi and Counsel receives *any* discovery in this matter.

arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'"[3] According to the *Washington Post*

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.[4]

The countries to which detainees may be brought are known to practice torture.[5]

According to recent news accounts, Guantánamo detainee Mamdouh Habib was rendered to Egypt by the United States *before* being moved to Cuba. During his six months in Egyptian custody, Mr. Habib was tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod." And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . . Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.[6]

The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of torture. In a report released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces

---

[3] Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, at http://www.newyorker.com/fact/content/?050214fa_fact6, ¶ 7.

[4] Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, [2002], at A1; *see also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1.

[5] *See*, *e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture,* L.A. Times, Jan. 13, [2005], at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

[6] Mayer, *Outsourcing Torture* at [¶ 54]

1  tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and
2  prison guards remained common and persistent."[7]

3  Mr. Al-Khalaqi also has reason to fear that he will be transferred into the custody of the government
4  of Afghanistan, Yemen, or a third country for continued illegal detention without due process of law. On
5  information and belief, a number of detainees have been removed to countries – including Pakistan and
6  Kuwait – where they have been imprisoned and denied access to the courts. Moreover, recent news reports
7  indicate that the United States government has contemplated transferring "large numbers of Afghan, Saudi
8  and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built
9  prisons in their home countries."[8]

## IV.

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." SEC v. Vision Communications, Inc., 74 F.3d 287, 291 (D.C. Cir. 1996); Envtl. Def. Fund v. EPA, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioner's request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. See Al-Fayed v. CIA, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

---

[7] Dep't of State, *Country Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c).

[8] Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.

4

1    Mr. Al-Khalaqi stands to suffer immeasurable and irreparable harm – from torture to possible death
2 – at the hands of a foreign government. Transfer to another country, even if "only" for continued
3 imprisonment, also circumvents Mr. Al-Khalaqi's right to adjudicate the legality of his detention in this
4 Court. By contrast, Respondents, who have already held Mr. Al-Khalaqi for several years, are asked only
5 to provide counsel and the Court with adequate notice of any intended removal of Mr. Al-Khalaqi from
6 Guantánamo. Respondents can suffer no conceivable harm from complying with such a request.

7    Mr. Al-Khalaqi is likely to succeed on the merits of his claims. He has properly invoked the
8 jurisdiction of this Court. See Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004). Judge Green has already ruled
9 that detainees in similar circumstances to Mr. Al-Khalaqi have stated actionable claims under the Due
10 Process Clause and the Geneva Conventions. For the United States Government to remove Petitioner to
11 countries that would afford no such protections would flout Judge Green's ruling and defeat the Court's
12 jurisdiction. Such a transfer would also violate basic international legal norms embodied not only in the
13 Geneva Conventions but also in the International Covenant on Civil and Political Rights and the Convention
14 Against Torture and Other Cruel and Degrading Treatment and Punishment.

15    Finally, public policy favors requiring Respondents to provide advance notice to counsel and the
16 Court of any intended removal of Petitioner from the Court's jurisdiction. No matter how satisfied the
17 Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly
18 before the Court and represented by counsel – be provided with a meaningful opportunity to contest his
19 transfer into the hands of those who might torture him or detain him indefinitely.

20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**IV.**

**CONCLUSION**

For the reasons discussed above, the motion should be granted.

Dated: December 5, 2005                                    Respectfully submitted,


                                                           /s/
                                                           **REUBEN C. CAHN**
                                                           Federal Defenders
                                                           225 Broadway, Suite 900
                                                           San Diego, CA 92101-5030
                                                           (619) 234-8467  (tel)
                                                           (619) 687-2666  (fax)
                                                           e-mail: Reuben_Cahn@fd.org


                                                           /s/
                                                           **ELLIS M. JOHNSTON**
                                                           Federal Defenders
                                                           225 Broadway, Suite 900
                                                           San Diego, CA 92101-5030
                                                           (619) 234-8467  (tel)
                                                           (619) 687-2666  (fax)
                                                           e-mail: Ellis_Johnston@fd.org


                                                           /s/
                                                           **HEATHER R. ROGERS**
                                                           Federal Defenders of San Diego, Inc.
                                                           225 Broadway, Suite 900
                                                           San Diego, CA  92101-5030
                                                           9619) 234-8467  (tel)
                                                           (619) 687-2666  (fax)
                                                           e-mail: Heather_Rogers@fd.org


                                                           Counsel for Petitioners