IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASIM BEN THABIT AL-KHALAQI,** ) <br> Guantánamo Bay Naval Station, ) <br> Guantánamo Bay, Cuba ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) Civil Case No. 05cv999-RBW <br> **GEORGE W. BUSH** ) **To be heard by Magistrate Judge Kay** <br> President of the United States ) **Under LCvR 72.2(a) and Nov. 2, 2005,** <br> The White House ) **Order in 05-2104 (CKK)** <br> 1600 Pennsylvania Avenue, N.W. ) <br> Washington, D.C. 20500; ) <br> ) <br> **DONALD RUMSFELD** ) <br> Secretary, United States ) <br> Department of Defense ) <br> 1000 Defense Pentagon ) REPLY TO GOVERNMENT'S <br> Washington, D.C. 20301; ) OPPOSITION TO MOTION SEEKING <br> ) ENTRY OF PROTECTIVE ORDER <br> **ARMY BRIG. GEN. JAY HOOD** ) AND REQUEST FOR STATUS <br> Commander, Joint Task Force - GTMO ) CONFERENCE <br> JTF-GTMO ) <br> APO AE 09360; and ) <br> ) <br> **ARMY COL. MIKE BUMGARNER** ) <br> Commander, Joint Detention ) <br> Operations Group, JTF - GTMO ) <br> JTF-GTMO ) <br> APO AE 09360 ) <br> ) <br> Respondents. ) <br> ) | |

1

## REPLY TO PETITIONER'S MOTION SEEKING ENTRY OF PROTECTIVE ORDER

Petitioner Asim Ben Thabit Al-Khalaqi, through undersigned counsel, respectfully files this reply addressing issues raised by the government in Respondent's Memorandum in Opposition to Petitioner's Motion Seeking Entry of Protective Order or Status Conference ("Opp."), filed on June 2, 2006.

Mr. Al-Khalaqi filed a motion seeking entry of the protective order so that Mr. Al-Khalaqi's court-appointed, undersigned counsel can visit Mr. Al-Khalaqi and advise him regarding the status of his case. Mr. Al-Khalaqi noted that he has a right to consult with his counsel under 28 U.S.C. § 2241, *Rasul v. Bush*, 542 U.S. 466 (2004), and familiar principles of due process. *See* Petitioner's Motion Seeking Entry of the Protective Order, or in the Alternative, A Status Conference on Entry of the Order ("Motion") at 5-8. Furthermore, the relief that Mr. Al-Khalaqi seeks is not novel. To the contrary, a number of judges in this district have entered protective orders since passage of the Detainee Treatment Act of 2005, Pub. L. No. 109-48, tit. X, 119 Stat. 2680 ("DTA")—a result that squares with the Court's appointing petitioner counsel in the first place. *See* Motion at 4-5 n.2.

The gist of the government's opposition to Mr. Al-Khalaqi's simple request is that the DTA strips this Court of jurisdiction to enter the Protective Order and that, in any event, Mr. Al-Khalaqi has no substantive right to counsel. The weight of authority makes clear that the government is wrong.

Mr. Al-Khalaqi maintains that, in keeping with the spirit of 18 U.S.C. § 3006 (the statute under which the Court appointed undersigned counsel to represent Mr. Al-Khalaqi), and in keeping with the laws in existence when Mr. Al-Khalaqi was originally detained at Guantanamo

Bay and when he filed his original habeas corpus petition—including the protections of the great writ of habeas corpus, the suspension clause, the prohibition against ex post facto violations, and the presumption against retroactive application of new law to disrupt settled expectations—this Court should enter the protective order and allow undersigned counsel to meet with Mr. Al-Khalaqi and advise him.

The DTA says nothing about detainee's access to counsel, and the Protective Order does not have any "bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention." *Adem v. Bush, et al.,* No. 05-0723, memo op. at 22 (D.D.C. Mar. 14, 2006) (Kay, J.). From both legal and pragmatic standpoints, entering the Protective Order so that Mr. Al-Khalaqi's counsel can advise him is the only result that makes sense.

I.

### THE DTA IN NO WAY AFFECTS MR. AL-KHALAQI'S RIGHT TO MEET AND CONFER WITH HIS COURT-APPOINTED COUNSEL

The government argues that the DTA "vests 'exclusive' jurisdiction in the D.C. Circuit," making it "inappropriate for the Court to order relief in the interim[1] that might infringe upon the Court of Appeal's exclusive jurisdiction." Opp. at 4. However, the government never explains how allowing Mr. Al-Khalaqi's court-appointed counsel to simply meet and confer with him "might infringe upon the Court of Appeal's exclusive jurisdiction" (even if there turns out to be such a thing). *See generally* Opp. at 2-3. It would not.

---

[1] Presumably, the "interim" is pending the D.C. Circuit's determination whether or not the DTA will be applied retroactively to suspend the writ of habeas corpus to some or all of the detainees.

As a threshold matter, the government's position that the DTA will eliminate Mr. Al-Khalaqi's rights under 28 U.S.C. § 2241 is far from a foregone conclusion. To the contrary, it is a position fraught with constitutional hurdles that the government may never overcome, including: (1) the express provisions guaranteeing the protections of the great writ in the Constitution itself, *see* U.S. Const. Art. I § 9 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it"); (2) the express constitutional provisions prohibiting ex post facto laws, *see id.* ("No Bill of Attainder or ex post facto Law shall be passed"); *see also Lynce v. Mathis,* 519 U.S. 433, 441 (1997) ("To fall within the *ex post facto* prohibition, a law must be retrospective-that is, it must apply to events occurring before its enactment-and it must disadvantage the offender affected by it . . . .") (internal quotation marks and citation omitted); *Weaver v. Graham,* 450 U.S. 24, 29 (1981) ("[A] law need not impair a 'vested right' to violate the *ex post facto* prohibition."); and (3) the presumption against retroactive application of new laws—especially in the absence of a crystal clear directive that the new law applies to every presently pending habeas petition, *see INS v. St. Cyr*, 533 U.S. 289, 316-17 (2001) ("Courts do not permit retroactive application of new directives absent an explicit retroactive directive. In order to be considered an explicit retroactive directive, the language [of a statute, regulation or rule] "must be so clear that it could sustain only one interpretation").[2] Unless and until the government overcomes these

---

[2] The DTA by no means contains such an unequivocal expression of intent to apply its habeas jurisdiction-stripping provisions to all pending habeas petitions. *See* DTA of 2005 §1005(h)(1) ("IN GENERAL -This section shall take effect on the date of the enactment of the Act."). This wording actually favors a *prospective*—not retroactive—application of the DTA.

significant hurdles, this Court's habeas corpus jurisdiction remains intact and Mr. Al-Khalaqi should have some access to the "guiding hand of counsel." *See Gideon v. Wainwright*, 372 U.S. 335, 341 (1963). This Court already decided that appointing Mr. Khalaqi counsel was both necessary and appropriate. New complexities in the proceeding only make it more, not less, so.

More to the point, the Protective Order does not have any "bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention." *Adem*, No. 05-0723 at 22. As Judge Kay has recognized:

> [T]he need to resolve questions regarding the logistics of counsel access will remain an issue, even if the D.C. Circuit and the Supreme Court determine that the DTA applies to those habeas cases currently pending before the District Court. Moreover, it will undoubtedly take months for the courts to grapple with the jurisdiction and retroactivity questions . . . . *Forcing [Petitioner] to wait until all such proceedings and appeals are concluded before permitting him to speak with his lawyer renders right to counsel meaningless.*

*Id*. at 22 n.25 (emphasis added). Just as the DTA says nothing about access to counsel, entering the Protective Order says nothing about which court ultimately has jurisdiction over the merits of Mr. Al-Khalaqi's case.

The government's citation to *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984), for the proposition that the Court should refrain from exercising jurisdiction in order to not compromise another court's (possible) future jurisdiction belies the fragility of the government's argument. *Telecommunications Research and Action Center* involves whether a district court can exercise its mandamus authority to compel an agency to act where exclusive jurisdiction to review agency actions was vested in the D.C. Circuit prior to the case being filed. In *Telecommunications Research and Action Center*, the party sought to compel the district court to accord it relief on the merits when the already-enacted

5

statute made clear that only the Court of Appeals could accord the requested relief.

Mr. Al- Khalaqi's case poses an entirely different question.

Congress had not enacted the DTA when Mr. Al-Khalaqi first filed his habeas petition, putting Mr. Al-Khalaqi's case in a materially different posture. In any event, unlike the party in *Telecommunications Research and Action Center*, **Mr. Al-Khalaqi is not asking for relief on the merits.** Far from it, Mr. Al-Khalaqi is asking only that this Court enter the Protective Order that is a prerequisite to his attorneys meeting and advising him regarding the most basic aspects of his case. Mr. Al-Khalaqi is asking this Court to take a small step toward making his counsel something more than just names on the docket. As the government and this Court well know, undersigned counsel are prohibited from meeting Mr. Al-Khalaqi until the Protective Order is entered in his case. Counsel are also prohibited from sending or receiving legal mail from Mr. Al-Khalaqi and are therefore unable to initiate, let alone establish, a functioning attorney-client relationship. Entry of the Protect Order will not affect the Court's jurisdictional concerns—it will merely effectuate Mr. Al-Khalaqi's right to consult with his attorneys.

In Mr. Al-Khalaqi's case, this Court appointed counsel pursuant to 18 U.S.C. § 3006A after the Supreme Court, in *Rasul v. Bush*, 524 U.S. 466 (2004), made clear that the Guantanamo Bay detainees have a statutory right of access under 28 U.S.C. § 2241. 524 U.S. at 473-84. Furthermore, as noted in Mr. Al-Khalaqi's original motion, authorities provide that appointment of counsel, while not required under the Sixth Amendment, can be required under the Fifth Amendment's Due Process Clause when a detainee's due process rights would be violated if he were to remain unrepresented. *See Eskidge v. Rhay*, 345 F.2d 778, 782 (9th Cir. 1970); *see also*

*Bounds v. Smith*, 430 U.S. 817, 822 (1977) (due process require prisoners[3] have "meaningful access" to the court system). No authority set forth in the government's opposition papers contradicts these principles or lends any weight whatsoever to the government's strained and alarmist argument that this Court's entering the Protective Order "might infringe upon the Court of Appeals' exclusive jurisdiction." Opp. at 4.

It cannot be overlooked that other detainee Petitioners have enjoyed ongoing access to their counsel where the Protective Orders have been entered, both before and after passage of the DTA.[4] Unsurprisingly, the development of attorney-client relationships has not created any trace of a jurisdictional crisis.

---

[3] Logic dictates that "detainees" who have not been convicted of any offense should have greater due process protections than typical habeas "prisoners" who have been convicted after *public* trials.

[4] In at least the following cases, Protective Orders have been entered subsequent to passage of the DTA:

> *Faizullah v. Bush*, 05-cv-01489 (D.D.C. April 21, 2006) (Urbina)
> *Sohail v. Bush*, 05-cv-00993 (D.D.C. April 21, 2006) (Urbina)
> *Al Salami v. Bush*, 05-cv-2452 (D.D.C. Apr. 14, 2006) (Friedman)
> *Zadran v Bush*, 05-cv-2367 (D.D.C., Apr. 12, 2006) (Roberts)
> *Alsaaei v. Bush*, 05-cv-2369 (D.D.C., Apr. 12, 2006) (Roberts)
> *Said v. Bush*, 05-cv-2384 (D.D.C., Apr. 12, 2006) (Roberts)
> *Al Shareef v. Bush*, 05-cv-2458 (D.D.C., Apr. 12, 2006) (Roberts)
> *Awad v. Bush*, 05-cv-2379, (D.D.C. Apr. 11, 2006) (Robertson)
> *Thabid v. Bush*, 05-cv-2398 (D.D.C., Mar. 21, 2006) (Huvelle)
> *Razakah v. Bush*, 05-cv-2370 (D.D.C., Mar. 17, 2006) (Sullivan)
> *Labed Ahmed v. Bush*, 05-cv-1234 (D.D.C., Mar. 2, 2006) (Sullivan)
> *Wahab v. Bush*, 05-cv-886 (D.D.C., Jan. 10. 2006) (Sullivan)
> *Mohammad v. Bush*, 05-cv-879 (D.D.C., Jan. 9, 2006) (Walton)
> *Bostan v. Bush*, 05-cv-883 (D.D.C., Jan. 9, 2006) (Robertson)
> *Khiali-Gul v. Bush*, 05-cv-877 (D.D.C., Jan. 6, 2006) (Robertson)

In sum, allowing Mr. Al-Khalaqi access to counsel cannot possibly "infringe" upon anything, whereas denying Mr. Al-Khalaqi that access may well infringe on his statutory and Fifth Amendment rights and make meaningless his "access" to the court system vindicated in *Rasul*. Thus, this Court should enter the Protective Order in this case.

## II.

### EVEN IF THE DTA APPLIES, THERE IS NO PROVISION DISALLOWING COUNSEL TO ADVISE AND CONSULT WITH MR. AL-KHALAQI

Even if the government could possibly overcome the obstacles set forth above, and the DTA were deemed applicable to Mr. Al-Khalaqi, there is nothing in the DTA precluding appointment of counsel to represent Mr. Al-Khalaqi in front of the D.C. Circuit or in the proceedings occurring now, regardless of whether the current proceedings turn out to be a precursor to the proceedings in the appellate court. *See generally* DTA. Indeed, it would seem best (and most economical in light of the projected Criminal Justice Act funds shortfall) for the D.C. Circuit to continue with the appointment of the Federal Defender's Office to represent individuals such as Mr. Al-Khalaqi. Thus, even if the DTA were to apply, in order to deprive Mr. Al-Khalaqi of the right to confer with his court-appointed counsel, the government would have to persuade the D.C. Court of Appeals that it would be better for native Yemeni, non-English-speaking Mr. Al-Khalaqi to litigate the legal issues permitted under the DTA (which he can neither read nor understand) pro se in the D.C. Court of Appeals. This is exceedingly unlikely. In any event, nothing about Mr. Al-Khalaqi's consulting with his court-appointed counsel now will make it more or less difficult for the D.C. Court of Appeals to handle the

matter of counsel (let alone the merits of the case) however it sees fit (assuming the D.C. Court of Appeals every has jurisdiction over this case at all).

### III.

### CONCLUSION

Mr. Al-Khalaqi makes the simplest of requests. All that he seeks is that this Court act in an extraordinarily limited fashion to enter the Protective Order and Memorandum of Understanding, so that undersigned counsel can visit Mr. Al-Khalaqi and explain what is happening to him. This Court already decided that appointing undersigned counsel to represent Mr. Al-Khalaqi would best serve the interests of justice. Mr. Al-Khalaqi asks only for the opportunity to have his appointed attorneys explain to him our system of justice and its workings—to put meat on the bones of the assistance of counsel already sanctioned and ordered by this Court.

In the alternative, if this Court is inclined to deny entry of the Protective Order in Mr. Al-Khalaqi's case, he asks for a status conference at which issues related to his access to counsel can be discussed and considered.

Respectfully submitted,

/s/ Ellis M. Johnston, III
/s/ Heather R. Rogers
/s/ Reuben Camper Cahn
Ellis M. Johnston, III (Cal. Bar No. 223664)
Heather R. Rogers (Cal. Bar No. 229519)
Reuben Camper Cahn (Florida Bar No. 874299)
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Counsel for Petitioner