# EXHIBIT F

**Westlaw.** **NewsRoom**

8/10/05 BOSTONG A1 Page 1

8/10/05 Boston Globe A1
2005 WLNR 12590847

Boston Globe (MA)
Copyright 2005 Globe Newspaper Company

August 10, 2005

Section: National/Foreign

**GUANTANAMO DETAINEES FIND FAULT WITH LAWYERS
INMATE FRUSTRATION BREEDS MISTRUST**

**Charlie Savage** Globe Staff

WASHINGTON - Shackled to the floor in a tiny cell, a **Guantanamo** Bay detainee did something last week that was unimaginable when the Supreme Court declared a year ago that suspected terrorists at the military base have a right to challenge their imprisonment in federal court.

The detainee fired his lawyer and dropped his case.

"He just said, `I don't want you to continue as my lawyers. I want you to withdraw my lawsuit,' " said David Remes, one of the Yemeni man's attorneys.

A year after they gained the right to have their day in court, many **Guantanamo** inmates are finding themselves frustrated by the slow movement of a legal process that, for the most part, they don't understand.

Many are taking it out on the only friends they have: the lawyers who had volunteered to help them.

In interviews, almost a dozen volunteer lawyers described similar recent complaints. Detainees have seen no benefit from having lawyers, because all their lawsuits have been frozen while the government appeals lower-court decisions. As a result, many increasingly accuse the lawyers of being useless.

The promise of legal recourse has become increasingly remote for many prisoners, who are nearing their fourth anniversary in detention without trial. Many do not understand the US legal system enough to grasp why their requests for hearings have been tied up in the courts, and the military has sharply restricted their communications with the attorneys.

Under those pressures, the relationship between many lawyers and their clients has noticeably frayed in recent months, the lawyers say. While reports of detainees

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8/10/05 BOSTONG A1                                                                                    Page 2

firing their lawyers are rare, many other inmates have stopped cooperating. Still others have berated their lawyers or condemned them as untrustworthy.

"We're fighting to prove we are who we say we are and not interrogators in disguise," said lawyer Julia Tarver, who represents Saudi inmates without charging a fee.

Tarver added, "The greater problem is that the detainees are all getting together and saying, `I've had a lawyer for X months and what have they done for me lately?' That is a sentiment that is spreading around the camp."

Of the roughly 500 prisoners currently at **Guantanamo**, 190 have signed on with volunteer lawyers and another 54 have told a judge they want to file suit as well.

Each lawsuit is a request for a hearing before a federal judge, during which they would be able to see whatever evidence the military may have to justify holding them as enemy combatants, and offer their rebuttal.

It has been more than a year since the Supreme Court ruling, and no such hearing has taken place. There is little prospect that the first non-military hearing will be held for at least another year.

The process has been halted by disputes over issues such as whether detainees could meet with lawyers and whether alternative hearings, set up by the military at which detainees have no lawyers and cannot see all the evidence against them are sufficient to meet the court's mandate.

David Rivkin, a former associate White House counsel in the administration of George H.W. Bush, said that the current administration was right to file appeals seeking to keep the cases out of civilian courtrooms. The military hearings, he said, were "carefully designed" to meet the court's requirements. He added that judges should defer to the commander-in-chief in disputes about how to detain enemies during wartime.

A Justice Department aide dismissed the notion that the government was to blame for troubles between lawyers and detainees: "Ending the detainee-counsel relationship is a matter between the counsel and the represented detainee," the aide said.

But some lawyers say the military is also undermining their ability to maintain cordial relations with clients by harassing them on the base and by imposing sharp restrictions on their communications. Phone calls are not allowed. Officers assigned to chaperone the lawyers take a rigid attitude about scheduled meetings, refusing to allow them to go longer than planned, the lawyers said. Letter delivery, they added, is sometimes delayed for months.

Moreover, lawyers said, interrogators have "manipulated" clients by saying that detainees with lawyers will not be released and that the lawyers cannot be trusted.

Joshua Colangelo-Bryan, who represents six Bahraini detainees, said interrogators had told his clients that he is a liar, and that the military knows everything they say to him.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8/10/05 BOSTONG A1                                                          Page 3

And in an April court filing, a lawyer, Tom Wilner, told a judge that two Kuwaiti clients told him that interrogators had warned them that he was Jewish.

"How could you trust Jews? Throughout history, Jews have betrayed Muslims. Don't you think that your lawyers, who are Jews, will betray you?" the complaint quoted one interrogator as saying. "Don't ever believe that a Jew will help a Muslim unless he gets more out of it than he gives. . . . What will other Arabs and Muslims think of you Kuwaitis when they know the only help you can get is from Jews?"

A military spokesman, Lieutenant Commander Alvin Plexico, denied the attorneys' accusations, saying that the Defense Department does not permit interrogators or guards to interfere in the relationship between detainees and their lawyers.

"The facts simply do not support their concerns," Plexico said. "We are not trying to undermine the relationships between detainees and counsel. To the contrary, the Defense Department has made extraordinary efforts to accommodate the detainees' access to counsel."

The dean of the Yale Law School, Harold Koh, who represented Haitian refugees detained at **Guantanamo** a decade ago, said he was not surprised to learn that relations between the detainees and their lawyers were fraying. Koh cited the cultural divide that prevents them from understanding how slowly courts can move under the best of circumstances.

And, Koh added, the **Guantanamo** dispute was the worst of circumstances. In an analogy also cited by several of the detainees' lawyers, he said the government's resistance to complying with the full spirit of the Supreme Court's 2004 decision is like Southern school districts who resisted desegregating for years after the court's 1954 Brown v. Board of Education decision.

"This is similar to the post-Brown era, when implementation of the court's ruling is left to people who are resistant," Koh said. "It's a familiar problem in the law, particularly with regard to individual rights decisions. . . . At the end of the day, we have to have trial judges willing to say that `the court's ruling is a ruling and you have to follow it.' "

Rivkin rejected the comparison to Southern resistance to desegregation, saying the administration is following the law. He called complaints by the detainees lawyers "self-righteous" and "naive," and said it is appropriate for the government to be aggressive in fighting **Guantanamo** litigation.

"Within the rules, you do things that fit your interests and you don't make things easier for the other guy," Rivkin said.

                        ---- INDEX REFERENCES ----

NEWS SUBJECT:   (Religion (1RE60); Judicial (1JU36); Legal (1LE33); Social Issues (1SO05); Judaism (1JU93))

REGION:   (Cuba (1CU43); Middle East (1MI23); Americas (1AM92); Caribbean (1CA06); Arab States (1AR46); Kuwait (1KU68); Latin America (1LA15))

                © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8/10/05 BOSTONG A1                                                                      Page 4

Language:   EN

OTHER INDEXING:   (BOARD OF EDUCATION; DEFENSE DEPARTMENT; JUSTICE DEPARTMENT; SUPREME COURT; WHITE HOUSE; YALE LAW SCHOOL)   (Alvin Plexico; David Remes; David Rivkin; George H.W. Bush; GUANTANAMO DETAINEES; Harold Koh; Joshua Colangelo-Bryan; Julia Tarver; Koh; Letter; Muslims; Plexico; Rivkin; Tarver; Tom Wilner)

EDITION: THIRD

Word Count: 1399
8/10/05 BOSTONG A1

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.