# IN THE UNITED STATES DISTRICT
# COURT FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ )<br>**ASIM BEN THABIT AL-KHALAQI,** )<br>Guantánamo Bay Naval Station, )<br>Guantánamo Bay, Cuba )<br>      Petitioner )<br> )<br>     v. )<br> )<br>**GEORGE W. BUSH** )<br>    President of the United States )<br>    The White House )<br>    1600 Pennsylvania Avenue, N.W. )<br>    Washington, D.C. 20500; )<br> )<br>**ROBERT M. GATES** )<br>    Secretary, United States )<br>    Department of Defense )<br>    1000 Defense Pentagon )<br>    Washington, D.C. 20301; )<br> )<br>**ARMY COL. BRICE GYURISKO** )<br>    Army Col. Commander, Joint Detention )<br>    Operations Group, JTF-GTMO; and )<br> )<br>**ARMY BRIG. GEN. JAY HOOD** )<br>    Commander, Joint Task Force - GTMO )<br> )<br>      Respondents )<br>_____) | CIVIL ACTION<br><br><br><br><br><br>No:  05-cv-00999<br><br>JUDGE REGGIE B. WALTON |

### PETITIONER'S NOTICE OF DTA FILING
### AND MOTION FOR STAY-AND-ABEY ORDER OR, ALTERNATIVELY,
### A TRANSFER ORDER UNDER 28 U.S.C. § 1631

Petitioner Asim Ben Thabit Al-Khalaqi notifies the Court of his intention to file a petition authorized by the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"), with the United States Court of Appeals for the District of Columbia Circuit. The DTA provides that the Court of Appeals has exclusive jurisdiction to determine "the validity of any final decision of a

Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." *See* DTA § 1005(e)(2).

Petitioner intends to file his DTA Petition in order to exhaust remedies available under the DTA, while maintaining his contention that the DTA does not provide an adequate substitute for habeas corpus proceedings. *See generally Boumediene v. Bush*, 127 S. Ct. 1478 (2007) ("*Boumediene II*") (statement of Stevens, J., joined by Kennedy, J., respecting denial of certiorari, and suggesting exhaustion of DTA remedies as a prerequisite for further potential Supreme Court review).

In the interest of justice, Petitioner requests that this Court enter an order staying this case while litigation concerning the DTA–including the adequacy of remedies and related jurisdictional questions–proceeds in the appellate courts, and holding a disposition of the merits in abeyance pending the outcome of that litigation. In the alternative, if this Court now determines that it lacks jurisdiction over the petition (which Petitioner respectfully suggests would be premature), then it should transfer the habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631, for consolidation with Petitioner's DTA action.

**A.     It Is Premature for this Court to Make a Determination as to Its Jurisdiction.**

"District courts . . . ordinarily have authority to issue stays, *see Landis v. North American Co.*, 299 U.S. 248, 254 (1936), where such a stay would be a proper exercise of discretion, *see Clinton v. Jones*, 520 U.S. 681, 706 (1997)." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). A stay is appropriate in this case because there is a substantial likelihood of further Supreme Court review directly addressing the scope and nature of federal courts' jurisdiction to hear cases involving the Guantanamo detainees.

On February 20, 2007, a divided panel of the Court of Appeals ruled that the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, had stripped the federal courts of jurisdiction over habeas actions, such as this, brought by foreign nationals held at Guantánamo. *Boumediene v. Bush*, 476 F.3d 981, 988 (D.C. Cir. 2007) ("*Boumediene I*"). On March

5, 2007, the *Boumediene* petitioners filed a certiorari petition in the Supreme Court; on April 2, 2007, the Court denied the petition. Three Justices dissented from the denial of the petition, however, stating that the jurisdictional and constitutional questions raised by the petitioners "deserve this Court's immediate attention." *Boumediene II*, 127 S. Ct. at 1479 (Breyer, J., joined by Souter & Ginsburg, JJ., dissenting). In addition, Justices Stevens and Kennedy recognized that despite "the obvious importance of the issues raised in these cases," it was "appropriate to deny these petitions *at this time*" in order to require the petitioners to exhaust their DTA remedies. *Id.* at 1478 (emphasis added). It therefore appears that five Justices will give serious consideration to a renewed certiorari petition seeking review of the Circuit Court's decision in *Boumediene I* following petitioners' exhaustion of their DTA remedies. A majority of the Supreme Court, in other words, has left open the possibility that the Court of Appeals' holding is erroneous and that petitioners have the right to pursue habeas relief in the district courts.

Indeed, the Supreme Court may reach these questions sooner, as at least one petition is pending before it that bears directly on the jurisdictional holding in *Boumediene I*. That petition is an original habeas petition in *In re Ali*, No. 06-1194, which directly challenges the MCA jurisdictional holding of the Court of Appeals. The Supreme Court considered the *Ali* petition sufficiently serious that it directed the government to respond to the petition. The government's response is due on May 16, 2007.

Moreover, the Court of Appeals has not issued its mandate in *Boumediene I*. The *Boumediene* petitioners have asked the Court of Appeals to stay the issuance of its mandate pending the completion of DTA proceedings that they intend to initiate, and the filing of a renewed petition for certiorari to review the Court of Appeals' jurisdictional ruling in *Boumediene I*. The Court of Appeals has not yet acted on the motion.

Under these circumstances, Petitioner submits that the most prudent action is for this Court to stay the pending case (and thus defer ruling on its jurisdiction) pending the final resolution of the DTA litigation in the appellate courts, including further Supreme Court review of the MCA

jurisdictional issues. *See generally Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155 (2006) (a court's "adjudicatory power is simply its authority to determine its own jurisdiction to deal further with the case"); *Ex parte Milligan*, 71 U.S. 118, 131 (1866) ("The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.").

B.  **The Stay-and-Abey Procedure Is Appropriate When Necessary to Avoid a Procedural Bar to Future Habeas Review.**

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254. In *Rhines v. Weber*, 544 U.S. 269 (2005), the prisoner filed in federal court a mixed habeas petition, raising some claims previously resolved in the state system together with other, unresolved claims. The Court recited its precedent in *Rose v. Lundy*, 455 U.S. 509 (1982), in which it had imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, had directed the federal courts to dismiss mixed petitions without prejudice, for the petitioners to present their unresolved claims in state court. *Id.* at 522. Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that petitioners could return to federal court following exhaustion of their state claims "with relative ease." Congress's enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal without prejudice by the federal court. Recognizing the problem, the *Rhines* Court allowed for district courts to apply the stay-and-abey procedure at their discretion.

As discussed above, this case and other pending habeas actions by Guantanamo detainees now pending in this Court involve a genuine prospect of further Supreme Court review to decide the federal courts' jurisdiction in the Guantanamo cases. Petitioner's right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired

if this Court were to dismiss this petition now. The situation is therefore comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum. For instance, one issue before the Supreme Court in the *Boumediene* certiorari petition was whether the MCA's effective-date provision removed statutory habeas corpus jurisdiction for cases pending at the time of the MCA's enactment. If the Supreme Court later grants certiorari to review the jurisdictional holding in *Boumediene I*, one potential outcome is that the Court could determine that the MCA does not deprive the federal district courts of statutory habeas jurisdiction for cases pending as of the MCA's enactment, and thereby avoid deciding the validity of the MCA's jurisdictional provision on constitutional grounds. If this Court were to dismiss this habeas petition now, notwithstanding such a potential outcome, Respondents could later argue that Petitioner is prevented under the MCA from filing another habeas petition, or is otherwise procedurally barred. It was the potential for such impediments to substantive habeas review to occur that caused the *Rhines* Court to permit district courts to exercise their discretion to enter stay-and-abey orders. *See also Boumediene II*, 127 S. Ct. at 1478 (statement of Stevens, J., joined by Kennedy, J, respecting denial of certiorari) ("Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'") (citation omitted).

      Overall, the dynamic and complex history of the Guantanamo cases–whose resolution may depend on an as yet unforeseeable convergence of decisions by the Supreme Court, the Executive Branch, Congress, and the Court of Appeals–makes it particularly appropriate for this Court to exercise caution before taking any action that may have unanticipated jurisdictional consequences, carrying the potential to deny Petitioner a fundamental right of judicial review that he has already effectively been denied for some six years. In short, the discretionary stay-and-abey framework is particularly appropriate in this case.

5

Indeed, the Supreme Court has indicated that it would be an abuse of discretion to dismiss a petition if the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [the petitioner] engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S at 277; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005); *see also Duncan v. Walker*, 533 U.S. 167, 182 (2001) (Stevens, J., joined by Souter, J., concurring in part and concurring in the judgment) (stating that "in our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious [habeas] claim and stay further proceedings pending the complete exhaustion of state remedies").

**C.    The *Rhines* Factors Uniformly Support a Stay-and-Abey Order in this Case.**

All three *Rhines* factors are satisfied in this case, thus warranting the requested stay-and-abey relief.

With respect to the first factor, good cause for failure to exhaust, there is no question that Petitioner had good cause for failing to exhaust the potential DTA remedy before now. The DTA was not enacted until many months after the filing of Petitioner's habeas petition in this Court in May 2005. Since then, the Supreme Court, Congress, and the Court of Appeals all have made decisions on the scope and nature of review available to the detainees, and there remains a genuine prospect of further Supreme Court review of the *Boumediene I* jurisdictional holding. Following the Court of Appeals' opinion in that case, the most prudent option available to Petitioner was to await the Supreme Court's ruling on *Boumediene* certiorari petition before filing any DTA petition. In light of the explanatory statement of Justices Stevens and Kennedy, it is now evident that exhaustion of DTA remedies will be a prerequisite to any further review by the Supreme Court.

In cases involving comparable uncertainty and confusion over the procedural requirements for a "properly filed" state habeas petition, the Supreme Court in *Pace* recognized that the petitioner could file a "protective" federal habeas petition, and request that the federal court issue a stay-and-abey order. 544 U.S. at 416-17 ("A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court.") The

equitable considerations recognized in *Pace* apply to an even greater extent in the Guantanamo detainees' cases, which confront novel legal issues in an ever-shifting procedural landscape.

As to the potential merits, three Justices of the Supreme Court would have granted expedited review of the matters raised in the *Boumediene* certiorari petition, and two Justices expressly required exhaustion of DTA claims. The DTA review in the Court of Appeals may involve the first-ever merits review of Petitioner's case by any court, despite his detention of some six years without any charges having been filed. Petitioner has a number of legal claims that he anticipates raising in the Court of Appeals, and even on the extremely limited factual record he has been able to obtain, a number of factual claims as well, including the failure of the Combatant Status Review Tribunal ("CSRT") to sustain any claim that Petitioner satisfied the definition of enemy combatant. *See* Exhibit A (Unclassified portion of Petitioner Al-Khalaqi's CSRT proceeding obtained through FOIA requests). Moreover, Petitioner anticipates challenging through his DTA petition the standard of "enemy combatant" applied by the CSRT's as well. He anticipates that such legal issues may become the subject of further review by the Supreme Court. DTA review under these circumstances–although Petitioner believes it is not an adequate substitute for habeas corpus review–provides at least some potential for relief in the interim, and therefore is not "plainly meritless."

Third, the delay in these proceedings cannot fairly be attributed to Petitioner. The Guantanamo habeas actions have been tied up in appellate litigation almost continuously since thier filing, during which time the courts, Congress, and the Executive Branch have struggled to fashion a suitable legal framework. Despite the unresolved legal situation, since being appointed to this habeas corpus case in October 2005, Petitioner's counsel have made multiple base visits for the purpose of developing facts to support his request for habeas relief, traveled overseas to Petitioner's home country, made contact with family members in the Middle East, worked with governmental and non-governmental organizations both in the United States and overseas, and joined in efforts with others to obtain relief for detainees. The overarching purpose of this work has been to seek a

fair and efficient review of Petitioner's case, by a court of law. In light of the statement in *Boumediene II* by Justices Stevens and Kennedy, Petitioner has every intention to exhaust the available DTA remedies expeditiously, to allow for further Supreme Court review.

In sum, the *Rhine* factors uniformly support this Court entering an order to stay this case, and to hold disposition of the merits in abeyance pending the outcome of the DTA litigation.

**D.    At a Minimum, the Court Should Stay Any Contemplated Dismissal of Petitioner's Habeas Claim for Sixty Days.**

If this Court declines to issue a stay-and-abey order, at a minimum, it should stay dismissal of the habeas corpus petition for sixty days from the date of ruling, pending the Court Appeals' determination as to what procedures should govern the Petitioner's DTA case. A sixty-day stay would allow for maintenance of the Protective Order governing this habeas action until the Court of Appeals can establish new procedures for Petitioner's DTA case.[1] By contrast, the alternative–dismissal of the habeas action and the consequent termination of the Protective Order–endangers Petitioner's ability to pursue a DTA action. For example, as this Court is aware, the Protective Order currently in place imposes an obligation upon counsel to destroy all protected documents or information (including copies) promptly within sixty days after a final resolution, and termination of any appeals, even though such documents will be necessary for Petitioner to pursue his DTA action. Also, the Protective Order sets out the only existing framework for attorney-client access at Guantanamo, and an interruption would severely prejudice Petitioner in the DTA action and any further habeas litigation, undermining counsel's representation and the attorney-client

---

[1] Petitioner notes that stay for sixty days should suffice because a motion to establish a protective order in DTA actions is already pending before the Court of Appeals in *Bismullah v. Gates*, No. 06-1197, and *Parhat v. Gates*, No. 06-1397. Briefing on the procedural issues presented in those appeals is nearly complete, and argument is scheduled for May 15, 2007. In addition, a motion to proceed with DTA review is also pending in the Court of Appeals in *Paracha v. Gates*, No. 06-1038. On April 11, 2007, the panel issued an order setting a briefing schedule, calendaring argument for September 27, 2007, and directing the parties in their briefs "to take into account the court's disposition of [*Bismullah* and *Parhat*] in addressing issues related to discovery and this court's scope of review."

relationship. The need for client consultation and the development of necessary facts is basic to the attorney-client relationship, and is required by the ethical obligations on counsel.

For these reasons, continuation of the Protective Order for a sixty-day period pending the establishment of new procedures by the Court of Appeals to govern Petitioner's DTA action is necessary to avoid a substantial injustice.

E.    **In the Event of Any Contemplated Dismissal, This Court Should Transfer the Case to The Court of Appeals Pursuant to 28 U.S.C. § 1631.**

If the Court nevertheless finds that it lacks jurisdiction to hear this case, and declines to enter a stay, it should transfer the habeas action to the Court of Appeals, for consolidation with Petitioner's DTA Petition. The transfer statute provides:

> Whenever a civil action is filed in a court . . . or appeal . . . is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which was transferred.

28 U.S.C. § 1631. As described above, it is in the interest of justice for this Court to ensure that the current Protective Order remains in place, thus maintaining counsel's unbroken access to evidence needed to prepare the DTA petition, as well as affording Petitioner an opportunity to participate in the preparation of his DTA submissions, pending the Court of Appeals' decision on how to govern these proceedings.[2] It is also in the interest of justice to preserve the status quo, where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues of client

---

[2] The government has taken the position both in the Court of Appeals and in this Court that the detainees' habeas cases should be transferred pursuant to 28 U.S.C. § 1631, and has cited legislative history of the DTA that it suggests supports such transfer. *E.g., Al Odah v. United States*, Nos. 05-5064, 05-5095 through 05-5116, Nos. 05-5062, 05-5063, Reply of Federal Parties Addressing the Detainee Treatment Act of 2005, at 28-31 (D.C. Cir. Mar. 17, 2006) (citing comments of Senator Graham, *inter alia*); *Hamdan v. Rumsfeld*, Civil Action No. 1:04-cv-01519-JR, Resp'ts' Reply in Supp. of Mot. to Dismiss, at 45 n.24 (D.D.C. Dec. 8, 2006).

access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, this Court–at a minimum–should ensure that there is no gap in governing procedures until the Court of Appeals can fully consider these matters in *Bismullah* and *Parhat*. *See supra* note 1.

## CONCLUSION

For the foregoing reasons, Petitioner Asim Ben Thabit Al-Khalaqi respectfully requests that this Court enter an order staying his habeas corpus petition pending the outcome of further litigation related to his anticipated DTA petition or, alternatively, if the Court now concludes that it is without jurisdiction, enter an order under 28 U.S.C. § 1631 transferring the pending action, including the existing Protective Order and the record in this case, to the Court of Appeals.

Dated: May 3, 2007

                                                        Respectfully submitted,

                                                       /s/ Ellis M. Johnston, III
                                                       /s/ Heather R. Rogers
                                                     /s/ Reuben Camper Cahn
                                                     Ellis M. Johnston, III (Cal. Bar No. 223664)
                                                     Heather R. Rogers (Cal. Bar No. 229519)
                                                     Reuben Camper Cahn (Florida Bar No. 874299)
                                                     Federal Defenders of San Diego, Inc.
                                                     225 Broadway, Suite 900
                                                     San Diego, California 92101-5008
                                                     Telephone: (619) 234-8467

                                                     Counsel for Petitioner